IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| LAURA JOHNSON, | § § | Docket No.: 19-701 |
| Plaintiff, | § § | |
| v. | § § | **COMPLAINT** |
| CONN CREDIT CORPORATION, INC., TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., ARS NATIONAL SERVICES, INC. | § § § § § § § § | FCRA, 15 USC §1681 et seq. |
| Defendants. | § | |

## COMPLAINT

1. Plaintiff Laura Johnson (hereafter, "Plaintiff"), a Texas resident, brings this action by and through her attorney, against Defendants Conn Credit Corporation, Inc. ("Conn"), Trans Union, LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian")(Trans Union, Equifax, and Experian may be collectively referred to as the "Credit Reporting Agenc(ies)" or "CRAs"), and ARS National Services, Inc. ("ARS" collectively hereinafter "Defendants"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, based upon information and belief.

### INTRODUCTION

2. Congress enacted the Fair Credit Reporting Act (FCRA) after finding that "inaccurate credit reports directly impair the efficiency of the banking system, and unfair

1

credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. § 1681. In drafting this legislation, Congress recognized the need for consumer reporting agencies to handle their responsibilities with fairness and impartiality. *Id*.

3. In order to best serve consumers, the FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit… in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Id*.

4. The FCRA creates obligations for consumer reporting agencies ("CRAs") which compile consumer credit reports. When these reports are compiled, CRAs "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." § 1681e.

5. Furnishers of credit information to CRAs also have responsibilities under the FCRA. Particularly, furnishers must conduct an investigation into the accuracy of information appearing on a consumer's credit report after being notified that a consumer has disputed its completeness or accuracy. § 1681s-2(b).

6. The statute includes penalties for entitles which fail to comply with its requirements. In cases of willful noncompliance with any of its requirements with respect to a consumer, an individual may be liable for any actual damages sustained by the consumer up to $1000, any amount of punitive damages a court deems appropriate, and reasonable attorney's fees. § 1681n. Alternatively, individuals who are found to be guilty of negligent noncompliance are liable to the consumer for actual damages and reasonable

attorney's fees. § 1981o.

7. Congress enacted the Fair Credit Reporting Act ("FDCPA") in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c).

8. Congress explained that the purpose of the Act was not only to eliminate abusive and harassing debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id*. §§ 1692(d) & (e).

9. After determining that the existing consumer protection laws were inadequate, § 1692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. § 1692k.

10. A debt collector who fails to comply with provisions of the FDCPA with respect to any person is liable to that person for actual damages, statutory damages up to $1000, and attorney's fees. § 1692k.

11. When evaluating claims under the FDCPA, the Fifth Circuit has adopted the "unsophisticated or least sophisticated consumer standard." *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). This standard requires

courts "in determining whether the defendant's actions are deceptive under the FDCPA [to] assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Id*.

12. The purpose of adopting this standard is protecting all consumers, "including the inexperienced, the untrained and the credulous, from deceptive debt collection practices." *Taylor v. Perrin Landry deLaunay &Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997).

## JURISDICTION AND VENUE

13. The Court has jurisdiction over this action under 28 U.S.C. § 1331, 15 U.S.C. § 1692 *et seq.* and 28 U.S.C. § 2201. If applicable, the Court also has pendent jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367(a).

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## NATURE OF THE ACTION

15. This action arises out of Defendants' violations of the FCRA. Furnisher of credit information, Defendant Conn Credit Corporation, Inc. ("Conn"), has failed to comply with its obligations under the FCRA by providing CRAs with inaccurate information regarding Plaintiff's credit. Additionally, Defendants Trans Union, LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian") have failed to comply with the FCRA by not assuring maximum possible accuracy of the information on Plaintiff's credit report.

16. Pursuant to the FCRA, Plaintiff is seeking actual damages, statutory damages, attorney's fees, punitive damages for willful noncompliance, declaratory relief,

and injunctive relief.

17. Plaintiff also brings this action seeking redress for Defendant's actions of using unfair and unconscionable means to collect a debt.

18. Defendants' actions violated § 1692 et seq. of Title 15 of the United States Code, commonly referred to as the Fair Debt Collections Practices Act ("FDCPA") which prohibits debt collectors from engaging in abusive, deceptive practices in the effort to collect on debt.

19. For the FDCPA claims, Plaintiff is also seeking damages, and declaratory and injunctive relief.

## PARTIES

20. Plaintiff is a natural person and a resident of the State of Texas and is a "consumer" as defined by the FCRA and the FDCPA at 15 U.S.C. §1692(a)(3). Under the FCRA, "the term 'consumer' means an individual." § 1681a.

21. Defendant Conn is a furnisher of credit information to Credit Reporting Agency ("CRA") Defendants Trans Union, Equifax, and Experian. Defendant Conn can be served through its registered agent in Dallas, Texas.

22. Defendants Trans Union, Equifax, and Experian are consumer reporting agencies as defined by the FCRA. A consumer reporting agency is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." *Id*. Defendant Experian can be served through its registered agent in Dallas, Texas.

Defendants Equifax and Trans Union can be served through their registered agent in Austin, Texas.

23. Defendant ARS National Services, Inc. ("ARS") is an American company with its registered agent in Austin, Texas.

24. Upon information and belief, Defendant ARS is a company that uses the mail, telephone, and facsimile and regularly engages in business the principal purpose of which is to attempt to collect debts alleged to be due to another.

25. Defendant ARS is regularly engaged, for profit, in the collection of debts allegedly owed by consumers to creditors.

26. Accordingly, Defendant ARS is a "debt collector" as defined under the FDCPA under 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

27. Defendant Conn issued an account ending in 0370 to Plaintiff which routinely appears on Plaintiff's consumer credit report.

28. On or about November 2, 2018, Plaintiff communicated with a representative of Conn via telephone. The representative informed Plaintiff that her account had been closed and that her debt had been sold to a third-party collection agency, Sequium Asset Solutions ("Sequium").

29. Plaintiff's Conn account balance was $3,307.04 when Sequium acquired Plaintiff's debt.

30. On or about March 25, 2019, Plaintiff spoke with a representative of Sequium via telephone. The balance on her account had increased to $3,367.79.

31. During this conversation, the Sequium representative offered to settle the full balance on Plaintiff's account for $1,549.18. Plaintiff accepted the settlement offer.

32. On or about March 26, 2019, Plaintiff paid Sequium $1,549.18. This payment was the only one Plaintiff had made on her account ending in 0370 based on Conn's representation that the account had been closed and sold to Sequium.

33. Plaintiff subsequently received a letter dated April 12, 2019 from Sequium which indicated that her Conn account had been settled in full for the amount of $1,549.18.

34. Between the time Plaintiff settled her debt with Sequium on March 26, 2019, and the time she received confirmation of the settlement on April 12, 2019, Plaintiff received a written communication from ARS.

35. ARS mailed to Plaintiff on or about April 10, 2019 a written communication with regard to the collection of the debt owed on the account referenced above [ending in 0370]. The communication informed Plaintiff the debt was assigned from Conn and letter listed a balance of $1,757.86.

36. The balance listed in the ARS letter is the difference between the original debt of $3,307.04 referenced above and full settlement payment of $1,549.18 referenced above. This was incorrect as Plaintiff had settled the debt in full with her final payment of $1,549.18 on March 26, 2019 to Sequium as acknowledged in writing by Sequium, and described in paragraphs 32-33 above.

37. Subsequently, based on the foregoing facts, on or about April 22, 2019, Plaintiff sent ARS a dispute letter via certified mail to ARS to dispute the Conn debt.

38. ARS responded to Plaintiff on or about April 30, 2019 regarding her dispute

letter and indicated that the outstanding alleged balance owed was $1,757.86.

39. On or around May 17, 2019, Plaintiff pulled her Experian credit report to determine what, if anything, was reporting on her credit.

40. When Plaintiff pulled her Experian credit report, she discovered that despite settling her account in full, her credit report falsely indicated that her Conn account remained open. Conn continued to inaccurately report a balance of $1,760.00 as of April 19, 2019.

41. Just six days later, on or about May 23, 2019 Plaintiff pulled her Experian report again. The Conn balance inaccurately reported as "charged off", and the amount "past due" increased to $1,797.00.

42. Plaintiff disputed the inaccurate information regarding the purported Conn account balance with the Defendant Credit Reporting Agencies: Trans Union, Equifax, and Experian.

43. In her dispute letters, Plaintiff stated that she had already settled her Conn account with Sequium and attached a copy of the Sequium letter confirming this settlement of the entire account in full.

44. Plaintiff also sent a letter to Conn and explained that she had settled her debt with Sequium and that the information on her credit report was inaccurate.

45. On July 12, 2019 Plaintiff received a letter from Defendant ARS seeking to collect the balance of $1,757.86 on her account ending in 0370. The letter provided Plaintiff with several payment options, including settlement for an amount less than the balance.

46. Subsequently, on or about July 20, 2019, Plaintiff sent ARS a second dispute

letter via certified mail to ARS to dispute the Conn debt.

47.     On or around August 2, 2019, Plaintiff received a report from Equifax that reported an unpaid balance charge off with Conn for $1,797.00.

48.     On or around August 3, 2019, Plaintiff received a written dispute update from Trans Union, that still reported an unpaid balance charge off with Conn for $1,796.00.

49.     Nevertheless, although the Credit Reporting Agencies claimed they had investigated her dispute, and that her information had been updated accordingly, the credit reports compiled by all Defendant CRAs continue to indicate a balance due on her Conn account.

50.     On or about September 12, 2019, Conn began harassing Plaintiff by sending a series of emails to try and induce Plaintiff into paying money to "Avoid third party placement on you Conn's account and start a . . . settlement" despite the fact that she already settled the Conn account with Sequim *and* notified Conn of this settlement by letter.

51.     Just one day later, on or about September 13, 2019, Conn sent Plaintiff another email informing her she "failed to pay [her] debt" and that defendant was "reviewing [her] account for possible legal action."

52.     Conn continued to send Plaintiff harassing emails with various topics ranging from options to settle—even though her account was already settled in full—to threats to take legal action against her. For example: "pay $50 to start a settlement"; "Pay $50 this month to stop your account from being placed to a 3rd party or legal agency."; "We are trying to determine your intent with your Conn's account & need a response. Call 1-800-253-7050 today. $1,230.5 off available now!"; "Prevent possible legal action, or placement

with an agency by calling Conn's at 1-800-253-7050." etc.

53. Plaintiff has received nearly daily emails between the time Conn resumed its contact with Plaintiff via email on September 12, 2019 through October 11, 2019, and the emails show no signs of stopping.

54. Because Plaintiff had already settled this debt with Sequium, Defendant ARS violated the FDCPA by seeking to collect on or about July 20, 2019 as referenced above and is therefore liable to Plaintiff for its unlawful behavior.

55. Similarly, because Plaintiff had already settled this debt with Sequium, Defendant Conn violated the FDCPA by seeking to collect on or about September 12, 2019 as referenced above and is therefore liable to Plaintiff for its unlawful behavior.

56. Defendant Conn has also failed to comply with its duties as a furnisher of credit information under the FCRA. Additionally, Defendant Credit Reporting Agencies have failed to ensure the maximum possible accuracy of the information appearing on Plaintiff's credit report. Defendants violated provisions of the FCRA and are therefore liable to Plaintiff.

57. Plaintiff continues to experience frustration and distress as a result of the continuous inaccurate information appearing on her credit report. She has made attempts to correct these inaccuracies, but she has been unsuccessful.

58. As a result of Defendant's conduct, Plaintiff has suffered actual damages in the form of emotional distress and financial and dignitary harm, arising from the injury to her credit rating.

## COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681 *et. seq.*
### (Against Trans Union, Equifax, Experian)

59. Plaintiff incorporates by reference paragraph all of the above paragraphs of this Complaint as though fully stated herein.

60. Under the FCRA, "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." § 1681e.

61. Here, Plaintiff informed CRA Defendants Trans Union, Equifax, and Experian that the information appearing on her credit report regarding a balance due on her Conn account was inaccurate. Plaintiff explained that she had settled this account with Sequium, a third-party collection agency, and even provided a letter from Sequium as evidence.

62. Although Plaintiff had settled her account and no longer owed a debt to Conn, her credit report continued to indicate the contrary. Even after Defendant CRAs claimed to have conducted an investigation into the accuracy of the information, the inaccurate reporting continued.

63. The Fifth Circuit has determined that "the standard of conduct by which the trier of fact must judge the adequacy of procedures is what a reasonably prudent person would do under the circumstances." *Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509 (5th Cir. 1982). It is clear that Defendant CRAs here did not meet that standard.

64. The failure of Defendant CRAs to assure the maximum possible accuracy of

the information in Plaintiff's credit report indicate that they were willfully noncompliant with the FCRA. This entitles Plaintiff to actual, statutory, and punitive damages, as well as reasonable attorney's fees. § 1681n.

65. In the alternative, should willful noncompliance not be found, Defendant CRAs were negligently noncompliant with the FCRA and are liable to Plaintiff for actual and statutory damages as well as reasonable attorney's fees. § 1681o.

## COUNT II
### Violations of the FCRA, 15 U.S.C. § 1681 *et. seq.*
### (Against Conn)

66. Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

67. Under the FCRA, when receiving notice of a dispute "with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the [furnisher of that information] shall (a) conduct an investigation with respect to the disputed information." § 1681s-2(b).

68. If the investigation conducted by a furnisher reveals that the information disputed by a consumer is inaccurate, it must either "(i) modify that item of information, (ii) delete that item of information, [or] (iii) permanently block the reporting of that item of information." Id.

69. Here, Defendant Conn was made aware that the information appearing on Plaintiff's credit report was inaccurate on 2 separate occasions. First, Plaintiff contacted

Conn directly in writing regarding the inaccuracy. Second, Plaintiff disputed the information with Defendant CRAs who verified it with Conn.

70. Had Defendant Conn complied with its duties under the FCRA and conducted an investigation into the accuracy of the information in Plaintiff's credit report, they would have discovered that Plaintiff had settled her debt with Sequium and that she no longer owed a balance. Defendants then would have been obligated to correct the information they supplied to Defendant CRAs.

71. As the furnisher of information to Defendant CRAs, Defendant Conn willfully failed to comply with its duties under the FCRA. For this reason, Defendant Conn is liable to Plaintiff for actual, statutory, and punitive damages as well as reasonable attorney's fees. § 1681n.

72. In the alternative, should willful noncompliance not be found Defendant Conn has been negligently noncompliant with its duties under the FCRA and is therefore liable to Plaintiff for actual and statutory damages as well as reasonable attorney's fees. § 1681o.

### Count III
### Violations of the FDCPA, 15 U.S.C. §1692e.
### (Against ARS and Conn)

73. Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

74. Under the FDCPA "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e.

13

This includes the false representation of "the character, amount, or legal status of any debt." Id.  Further, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." § 1692d.

75. Here, Defendants did not have the legal ability to seek to collect on Plaintiff's debt after it had been settled for its full amount by another third-party collection agency.  The debt was extinguished by full settlement.  Plaintiff informed Defendants of this fact when she disputed the debt in writing. Nevertheless, Defendants did not cease collection efforts.

76. By sending collection letters to Plaintiff, Defendant ARS acted deceptively by creating the impression that Plaintiff's debt was still owed, even though she had already paid another third-party debt collection agency to settle her account in full.

77. By sending collection emails to Plaintiff, Defendant Conn acted deceptively by creating the impression that Plaintiff's debt was still owed, even though she had already paid another third-party debt collection agency to settle her account in full.  Additionally, by sending numerous emails with threats to take legal action against Plaintiff, Conn engaged in conduct with the natural consequence to harass Plaintiff.

78. The Fifth Circuit has agreed with other courts in holding "a debt collector violates the FDCPA when it 'uses language in its [collection] letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable.'" *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2019) (quoting *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014)).

14

79. Under the unsophisticated or least sophisticated consumer standard that has been adopted by the court, Defendants behavior is unquestionably deceptive. A consumer who received Defendants communications would likely be under the impression that their debt was legally enforceable even when, as here, it was not.

80. Defendants are liable to Plaintiff for seeking to collect on a debt that had already been settled and creating the false representation that it was within its legal right to do so. Defendants continued to insist that Plaintiff's debt was still owed, even when confronted with evidence that it had already been settled with Sequium. This is precisely the kind of behavior that Congress sought to avoid in enacting the FDCPA.

## COUNT IV
## Violations of the FDCPA, 15 U.S.C. §1692f.
## (Against ARS)

81. Plaintiff repeats, reiterates and incorporates the allegations contained in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

82. Under the FDCPA "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." § 1692f. This section lists a number of actions that constitute a violation but does so "without limiting the general application of the foregoing." *Id.*

83. The Fifth Circuit has acknowledged that "Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad

remedial scope." *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F. 3d 385 (5th Cir. 2002).

84. The actions taken by Defendant ARS here in attempting to collect on a debt that had already been settled with a different collection agency clearly fit into the broad category of unfair and unconscionable. Defendant is therefore liable to Plaintiff for its unlawful actions.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants Conn, ARS, and the CRAs (Experian, TransUnion, and Equifax) as follows:

(a) Award Plaintiff statutory damages of $1000 pursuant to § 1681n;

(b) Award Plaintiff actual damages pursuant to § 1681n;

(c) Award Plaintiff punitive damages pursuant to § 1681n;

(d) Award Plaintiff reasonable attorney's fees pursuant to § 1681n;

(e) Grant declaratory relief finding that Defendants willfully violated the FCRA;

(f) Grant injunctive relief that Defendants to take steps to avoid future violations of the FCRA;

(g) Awarding Plaintiff statutory damages of $1000 pursuant to § 1692k;

(h) Awarding Plaintiff actual damages pursuant to § 1692k;

(i) Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses pursuant to § 1692k;

(j) Awarding declaratory relief that Defendant violated the FDCPA

(k) Awarding pre-judgment interest and post-judgment interest; and

(l) Awarding any other relief that the Court finds to be just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED,

Dated: December 10, 2019

                                                **PRICE LAW GROUP, APC**
By: /s/Lisbeth Findsen
Lisbeth Findsen, AZ #023205
Price Law Group, APC
8245 N 85th Way
Scottsdale AZ 85258
P: (818) 600-5575
F: (818) 600-5415
E: beth@pricelawgroup.com
Attorney for Plaintiff